```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 07-61602-Civ-COHN
                                      (05-60072-Cr-COHN)
                              MAGISTRATE JUDGE P. A. WHITE
JEHSON JESSIAH,               :

        Movant,               :

v.                            :       REPORT OF
                                      MAGISTRATE JUDGE
UNITED STATES OF AMERICA,     :

        Respondent.           :
_____
```

## I. Introduction

This matter is before the Court on the movant Jehson Jessiah's Amended Motion to Vacate pursuant to 28 U.S.C. §2255 [DE#'s 1, 2, 7], attacking his convictions and sentences in this Court for conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §963 and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §846 entered following a jury verdict.  Case No. 05-60072-Cr-Cohn.  The Court has reviewed the motion and amendment with supporting memorandum, the government's response, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

## II. Claims Raised

The movant raises the following claims:

> 1.  He was denied effective assistance of trial counsel, where his lawyer failed to move for a mistrial within seven days of the verdict based on a jury note; prosecutorial misconduct; the district court's failure to give a multiple conspiracies jury instruction; and

        insufficiency of the evidence.

2. He was denied effective assistance of trial and appellate counsel, where counsel failed to argue that the introduction of evidence regarding the attempted smuggling of three kilograms of cocaine by Mary Weir was unduly prejudicial.

3. The District Court lacked subject matter jurisdiction over the charged criminal conduct that occurred partially in the Bahamas.

### III.  Procedural History

The movant was charged by Superseding Indictment with conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §963 and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §846.[1] (Cr-DE# 25). The Superseding Indictment specifically alleged that the conspiracy began "approximately in or about September 2003" and continued until "in or about March 2005." (Cr-DE# 25). The movant proceeded to trial where he was found guilty as charged following a jury verdict. (Cr-DE# 195). The movant was sentenced to concurrent sentences of 199 months in prison, followed by five years of supervised release. (Cr-DE#'s 218, 219).  The movant appealed, raising the following claims[2]:

1. The District Court erroneously Admitted Jessiah's Statements where Jessiah had not Voluntarily Waived his

---

[1] The Superseding Indictment also charged co-defendants Prince Taylor, Carlton James, Orin Cort, Donovan Walters, Derrick Thompson and Wislet Lougeune.

[2] The claims are gleaned from the written but unpublished appellate opinion, United States v. Cort, et al., 2007 WL 444976 (11 Cir. 2007), and from the movant's initial brief on appeal, located on Westlaw, a legal research database, at United States v. Cort, et al., 2007 WL 444976 (11 Cir. 2007).

2

        Right against Self-incrimination and was Questioned Before being Advised of his <u>Miranda</u> Rights.

    2.    Trial Counsel was Ineffective for Failing to Move to Suppress his Confession that was Obtained by Exploitation of an Illegal Arrest.

    3.    The District Court Abused its Discretion in Denying Jessiah's Motion for Mistrial where the Prosecutor Elicited Incriminating Hearsay testimony which Prejudiced Appellant's Right to a Fair Trial.

    4.    The District Court Erred in Admitting Eight Kilograms of Cocaine found on the Discovery Cruise ship in a Common area Resulting in the Admission of Highly Prejudicial evidence which lacked any probative value.

    5.    The District Court Erred in Denying Jessiah's Motion for Judgment of Acquittal where the Evidence was Insufficient to Support the Convictions.

    6.    The District Court committed Plain Error when it Sentenced Jessiah using an Erroneous Base offense Level under section 2D 1.1 (a)(3) Regarding the Quantity of Cocaine involved in the Conspiracy.

    7.    The District Court Erred in Enhancing Jessiah's Base offense level for Obstruction of Justice.

On February 12, 2007, the Eleventh Circuit Court of Appeals *per curiam* affirmed the movant's convictions and sentences in a written but unpublished opinion. <u>United States v. Cort, et al.</u>, 2007 WL 444976 (11 Cir. 2007). The opinion did not address the ineffective assistance of trial counsel claim. The judgment of conviction in the underlying criminal case became final upon the denial of the movant's petition for writ of certiorari on October 10, 2007. This motion to vacate was timely filed less than one year later on November 8, 2007. (Civ-DE# 1). The government rightfully does not challenge this federal petition as time-barred.

3

IV. <u>Analysis of the Claims</u>

In this collateral proceeding, the movant raises multiple claims which challenge trial and appellate counsels' effectiveness. In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential, <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability are insufficient to require a hearing or further consideration. <u>See</u> <u>Ferguson v. United</u>

4

States, 699 F.2d 1071 (11 Cir. 1983); United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

The evidence adduced at trial established as follows. From September 2003 until March 2005 the movant, along with several others, conspired to smuggle cocaine into the United States from the Bahamas aboard the maritime vessel Discovery, a passenger cruise ship operating daily round trips from Fort Lauderdale to the Bahamas. The movant was a taxi driver who regularly drove the others, who were Discovery crew members, from the port to deliver the cocaine. On January 4, 2004 law enforcement agents boarded the Discovery in Fort Lauderdale upon its return from its daily trip to the Bahamas. The captain informed them that two crew members had reported possible drug smuggling activities. (DE# 256 at 11-14). The agents searched the vessel and seized approximately nine kilograms of cocaine and $54,000 in United States currency. (DE# 256 at 14-19, 45-46). Trial testimony revealed that a total of 14 kilograms of cocaine had been smuggled aboard the vessel that day, but five kilograms had been hidden prior to the search. (DE# 237 at 46-48; 256 at 17). Three crew members and one other person were arrested, and they all pled guilty to conspiracy to import cocaine and cooperated with the government. (DE# 236 at 36; DE# 237 at 48, 171-72; 36, DE# 256 at 26-27, 42, 198-200; DE# 257 at 56). Two crew members identified the movant as a co-conspirator. (DE# 256 at 32-34, 36; DE# 237 at 195-96). Law enforcement agents found another eight kilograms of cocaine aboard the vessel in December 2004, which was introduced into evidence over objection. (DE# 256 at 42-46). The movant and the remaining co-defendants were arrested in April 2005. (DE# 2; DE# 256 at 69-70, 76-77). Prior to the movant's April 25, 2005 arrest, ICE Agent Stephen Houk approached him as he was dropping off a fare in Hollywood, Florida and explained about the investigation and asked him to cooperate.

(DE# 256 at 59-60, 184). The movant consented to a search of his taxi and his residence.  Agent Houk read the movant his Miranda rights from a printed card and he had the movant acknowledge that he understood each right as it was read.  The movant waived his Miranda rights and made a statement which Agent Houk memorialized into writing and signed by the movant.  This statement was read into evidence.  (DE# 256 at 60, 63-65; DE# 258 at 219-224).  The movant also told Houk that during the holidays the crew members generously paid him hundreds of dollars to transport them short distances.

The movant's role in the importation conspiracy was to meet the vessel at the port in Fort Lauderdale and drive crew member to deliver the smuggled cocaine to co-defendant Lougeune, a Bahamian national or co-defendant Crenshaw, a United States citizen.  (DE# 237 at 8-9, 13-14, 41-42, 62-64, 185-186, 193). Lougeune and two crew members testified that the movant was aware that the crew was delivering drugs, and that the movant was paid $200 per crew member for a very short ride, that there were usually four or five crew members in the taxi, and the movant sometimes called Crenshaw. (DE# 237 at 41, 65-67, 187-189, 192).

Trial testimony also revealed other connections between the movant and the crew members.  On March 15, 2005 the movant purchased a cruise ticket on another ship, the Regal Empress, for Mary Anne Weir, who was subsequently arrested for attempting to import cocaine when she attempted to board the ship in the Bahamas. (DE# 256 at 53-56, 101-108).  There was evidence that the movant participated in hundreds of telephone calls to crew members, and three crew members had the movant's phone number.  (DE# 256 at 71-73, 75-76, 79-80).  The movant, who was the only co-defendant to present a defense case, presented testimony that he often gave his telephone number to clients who needed transportation from the port

6

and that he had a reputation for honesty. (DE# 258 at 164-166, 168-172, 177-216). The movant also testified that he purchased cell phones for crew members who were unable to leave the ship and charged them for the cost, sometimes subscribed in his own name and sometimes paid the bills as a service for the crew members. (DE# 258 at 180, 186-88, 200). The movant also admitted that he sometimes transported three crew members, considered to be his friends, in his own car rather than the taxi. (DE# 258 205).

With regard to the circumstances of the arrest, the movant reiterated his testimony at the suppression hearing that Agent Houk had told him he had an arrest warrant and the movant had already been indicted. (DE# 258 at 196-97). He also claimed that he only heard the agent read a portion of his Miranda rights, he denied making some of the statements and denied reading the written statement before signing it. (DE# 258 at 181-82, 189-192, 201-202). The movant denied that he instructed Agent Houk to make a correction on the first page of the written statement and, consistent with his testimony at the suppression hearing, he denied telling the agent that the crew paid him hundreds of dollars, claiming that he had been referring to passengers rather than crew members. (DE# 258 at 201, 206-07). The movant also denied knowing that Mary Ann Weir was smuggling cocaine. (DE# 258 at 214-15). The movant also testified that although there were numerous calls on his cell phone to and from crew members, he denied that he used the phone - stating that people often borrow his phones - and that any calls were related only to taxi service. (DE# 258 at 210-214).

The crux of the plaintiff's argument is that trial counsel was ineffective for failing to move for a mistrial when it became clear, after a jury note, that the jury had rejected evidence concerning the movant's role with the Discovery and had instead considered and relied on the prejudicial evidence concerning the

7

Regal Empress conspiracy, which was committed in the Bahamas outside of the court's jurisdiction, and appellate counsel was ineffective for failing to raise the claim on appeal. To establish that trial counsel was ineffective, the movant must show that counsel would have prevailed in raising the claims the movant believes would have formed the basis for a mistrial. This he cannot do.

Upon a review of the record, the Undersigned finds that the introduction of the evidence concerning the Regal Empress conspiracy was not overly prejudicial as the other evidence of the movant's guilt was overwhelming, nor was any of the alleged prosecutorial misconduct prejudicial. The evidence produced at trial, which the Eleventh Circuit Court of Appeals found to be sufficient to convict the movant, established that the movant participated in a conspiracy to facilitate the transportation of cocaine from cruise ships returning from the Bahamas.

The proof presented at trial showed that the movant participated in a cocaine importation conspiracy consisting of (1) transporting cocaine from the Discovery for its crew members and (2) arranging with passenger Mary Anne Weir to go to the Bahamas on the Regal Empress and return with cocaine. While the movant was involved with cocaine smuggling aboard different vessels, his role of transporting the cocaine away from the port in his taxi was the same. As detailed above, the evidence revealed substantial connections between the movant and with indicted and unindicted co-conspirators.

In addition, the movant's argument that there were two separate conspiracies, even if true, does not provide an avenue for relief. This is because the movant cannot establish any prejudice resulting from a variance between the indictment and the evidence

8

produced at trial.  A conviction will not be reversed on appeal simply "because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material *and* [2] substantially prejudiced the defendant." United States v. Alred, 144 F.3d 1405, 1414 (11 Cir. 1998) (emphasis added). "The arguable existence of multiple conspiracies . . . does *not* constitute a *material* variance from the indictment if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that a single conspiracy existed beyond a reasonable doubt." United States v. Suarez, 313 F.3d 1287, 1289 (11 Cir. 2002) (emphasis added).

To determine whether the jury could have found a single conspiracy, the court should consider: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." Id. "[T]he government must show an interdependence among the alleged co-conspirators." United States v. Chandler, 388 F.3d 796, 811 (11 Cir. 2004). Separate transactions, however, are not necessarily separate conspiracies, "so long as the conspirators act in *concert* to further a common goal." Id. (emphasis in original). "[I]f a defendant's actions facilitated the endeavors of other co[-]conspirators or facilitated the venture as a whole, then a single conspiracy is shown." Id. (citation and internal quotation marks omitted). "It is irrelevant that particular conspirators may not have known other conspirators or [may not] have participated in every stage of the conspiracy; all that the government must prove ... is an agreement or *common purpose* to violate the law and intentional joining in this goal by co [-]conspirators." Alred, 144 F.3d at 1415 (emphasis added). And "[i]n a drug conspiracy, in which the object of the conspiracy is clearly illegal and there are various clandestine functions to perform, the conspirators can be charged with knowledge that others are performing these different functions." Chandler, 388 F.3d at

9

811 n. 21. Thus, the finding of a single conspiracy is permitted where a "key man" directs and coordinates the activities and individual efforts of various combinations of people. United States v. Anderson, 326 F.3d 1319, 1327-28 (11th Cir. 2003).

In this case, there was no material variance because there was substantial evidence upon which the jury could have found beyond a reasonable doubt that there was a single conspiracy involving the transportation of cocaine, and that the movant was an integral part of the organization. Several of the movant's co-conspirators testified about their involvement in the organization and how the movant was involved in the illegal scheme.  The movant had prior knowledge that the government was going to produce evidence concerning Mary Anne Weir at trial, and the introduction of evidence concerning the movant's involvement with Weir in no way could have confused the jury about the movant's criminal activity with the crew members of the Discovery.  Thus, no prejudice has been established arising from trial or appellate counsel's failure to pursue this issue.

The movant's claim that the District Court was without subject matter jurisdiction to convict him of criminal conspiracy involving Weir because she committed her crime in the Bahamas is without merit.  As discussed above, the evidence showed that the movant participated in the conspiracy by purchasing a cruise ticket in Fort Lauderdale, which lies within this federal district.   As such, the movant cannot show that he was prejudice d by counsel's failure to raise an argument challenging subject matter jurisdiction.

V. <u>Conclusion</u>

Based on the foregoing, it is recommended that the Amended Motion to Vacate [DE#'s 1, 2, 7] be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 15th day of April, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Jehson Jessiah, <u>Pro Se</u>
    Reg. No. 57222-004
    Butner Correctional Facility
    P. O. Box 999
    Butner, NC 27509-0999

    Patricia L. Diaz, AUSA
    U.S. Attorney's Office
    500 E. Broward Boulevard
    Suite 700
    Fort Lauderdale, FL 33394